UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
YVETTE MCKENZIE-GILYARD,

        Plaintiff-Appellee,        **MEMORANDUM and ORDER**

— against —        08-CV-160 (SLT)

HSBC BANK NEVADA, N.A.,

        Defendant-Appellant.
----------------------------------------------------------------X

**TOWNES, United States District Judge:**

On January 2, 2008, defendant HSBC Bank Nevada, N.A. ("HSBC") filed a notice of appeal and moved this Court, pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rules 8001(b) and 8003, for an order granting it leave to bring an interlocutory appeal from the Orders of the Bankruptcy Court for the Eastern District of New York, denying HSBC's motion for summary judgment. For the reasons set forth below, defendant's motion for leave to appeal is denied.

## BACKGROUND

On March 28, 2005, plaintiff filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. On August 17, 2005, she received a discharge of all her debts pursuant to 11 U.S.C. § 524(a)(2), and on May 3, 2006, her bankruptcy case was closed. Prior to the closing of her bankruptcy case, on April 28, 2006, plaintiff requested that the three major credit reporting agencies (*i.e.*, Experian, Equifax, and TransUnion) "reinvestigate all tradelines of all creditors listed on her bankruptcy proceeding, including the tradeline of [HSBC]." Compl. ¶ 16, Exh. 1. Plaintiff alleges that her TransUnion credit report, dated May 4, 2006, states that the account in question – a credit card account issued by Seaman's Furniture Company to plaintiff, which was subsequently owned by Household Retail Services ("HRS"), a predecessor of an HSBC affiliate (the "Account") – was closed by HSBC and the balance of approximately $4,867.00 was charged

off as bad debt.[1]  The TransUnion credit report shows that it was last updated by HSBC on October 4, 2004.  As reported by TransUnion, the Account remained "charged off as bad debt" even though HRS was named as a creditor in plaintiff's Chapter 7 bankruptcy.  Compl. ¶ 69.

HSBC contends that it never received notice of plaintiff's discharge, or any dispute that plaintiff had with TransUnion regarding the Account because, on October 15, 2004 – nearly five months before plaintiff filed for bankruptcy protection – it sold the Account to Arrow Financial Services LLC ("Arrow").  Pursuant to the sale agreements between HSBC and Arrow, the Account was one of nearly 10,000 accounts that were transferred to Arrow, and HSBC was entitled to "receive a fee of five percent of the payments received by Arrow . . . more than four months after they are transferred."  Bankr. Mem. Decision, p. 4.  HSBC contends that it advised plaintiff by letter, on October 30, 2004, that the Account was transferred to Arrow, and that all payments and inquiries should be directed to Arrow, however, plaintiff denies that she received any letter from HSBC, or Arrow, regarding the transfer of the Account.

On June 8, 2006, the Bankruptcy Court, upon plaintiff's motion, reopened the Chapter 7 bankruptcy case, and on June 26, 2006, plaintiff filed a complaint against HSBC, alleging that HSBC violated the discharge injunction, entered on August 17, 2005 pursuant to 11 U.S.C. § 524(a)(2), violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and is liable for defamation.  However, on May 8, 2007, plaintiff voluntarily withdrew her claims under FCRA and for defamation, leaving only her claim against HSBC for violating the discharge

---

[1] By contrast, plaintiff's Equifax credit report, dated May 15, 2006, which described the Account as "Transfer/Sold" and included a blank "Balance Amount," is not at issue in this action.  *See* Bankruptcy Court Memorandum Decision dated December 11, 2007 ("Bankr. Mem. Decision"), p. 5.  However, the complaint alleges that once the Account was discharged in bankruptcy, the proper description, according to industry standards, was that it was "Included in Bankruptcy" or "Discharged in Bankruptcy," along with a blank balance amount.  Compl. ¶ 62.

injunction statute, § 524.[2] With respect to this remaining claim, plaintiff alleges that "she has suffered and continues to suffer 'adverse action, credit denials, embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.'" Bankr. Mem. Decision, p. 6 (quoting Compl. ¶ 25). Plaintiff further alleges that "her ability to obtain credit is limited and that she faces higher costs in future consumer transactions and may be denied loans for which she would otherwise qualify." *Id*. Plaintiff seeks "actual damages, punitive damages, attorney fees and costs." Compl. ¶ 86.

Following discovery, HSBC moved for summary judgment, and the Bankruptcy Court denied that motion by an Order and a Memorandum Decision, both dated December 11, 2007. The Bankruptcy Court first concluded that plaintiff's claim for a violation of the discharge injunction should be viewed as a motion for a sanction of civil contempt, requiring proof, by clear and convincing evidence, that HSBC knew of the lawful order and did not comply with it. Bankr. Mem. Decision, p. 11. The Bankruptcy Court then identified HSBC's burden on the motion for summary judgment as proving, based upon the undisputed record, that plaintiff cannot prove the elements of her specific claim, which the Bankruptcy Court detailed as: (1) whether HSBC was aware of plaintiff's bankruptcy discharge; (2) whether HSBC was aware that it was reporting the status of the Account incorrectly; (3) whether HSBC had the ability to

---

[2] Section 524 provides, in relevant part, "A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . ." 11 U.S.C. § 524. As the Supreme Court has recently recognized, "The discharge order [pursuant to § 524] releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004) (citing §§ 524(a)(1), (2) and 3 W. Norton, Bankruptcy Law and Practice 2d § 48:1, p. 48-3 (1998)).

3

update or correct the reporting status after plaintiff received her bankruptcy discharge; and (4) whether HSBC willfully refused to update or correct the Account's reporting status. *Id.*, pp. 12-13. After reviewing the available evidence regarding these issues, the Bankruptcy Court denied HSBC's motion, holding that "there is a genuine issue of fact as to each of the elements of the Plaintiff's claim for a violation of the discharge injunction."[3] *Id.*, p. 24.

## DISCUSSION

HSBC moves this Court, pursuant to 28 U.S.C. § 158(a),[4] to grant it leave to appeal the Bankruptcy Court's Orders, denying HSBC's motion for summary judgment. Since the Bankruptcy Court's denial of summary judgment is an interlocutory order, the parties agree that the relevant standard is that "set forth in Section 1292(b) of the Judicial Code, [28 U.S.C. § 1292(b),] which governs interlocutory appeals from the district courts to [] the Courts of Appeals."[5] *In re Enron Corp.*, 316 B.R. 767, 771 (S.D.N.Y. 2004); *see also In re Quigley,* 323

---

[3] HSBC also challenged plaintiff's claim of damages, but the Bankruptcy Court concluded that although plaintiff could not recover actual or statutory damages for a violation of the discharge injunction, she could recover attorneys' fees, costs, and punitive damages upon proving her case. Bankr. Mem. Decision, pp. 22-24. Thus, this aspect of HSBC's motion was also denied.

[4] Section 158(a) provides, in relevant part, "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees; . . . and, with leave of the court from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a).

[5] Section 1292(b) provides, in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order . . . .

B.R. 70, 77 (S.D.N.Y. 2005) ("courts in this Circuit have invariably held [that] all appeals governed by Section 158(a)(3) . . . should refer to the standards articulated by Section 1292(b) to determine whether leave to appeal should be granted.") (citing *In re Kassover*, 343 F.3d 91 (2d Cir. 2003)). Accordingly, HSBC's motion can only be granted if it establishes that "the order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Enron*, 316 B.R. at 771-72 (internal quotation marks and citation omitted); *see also In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007); *In re Manhattan Investment Fund Ltd.*, 288 B.R. 52, 56 (S.D.N.Y. 2002). HSBC must also demonstrate that its appeal involves "exceptional circumstances." *In re Perry H. Koplik & Sons*, 377 B.R. at 73. As recognized in *Manhattan Investment Fund*:

> The Second Circuit has repeatedly urged the district courts to exercise great care in making a § 1292(b) certification. Certification of a permissive interlocutory appeal is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation, and is not intended as a vehicle to provide early review of difficult rulings in hard cases.

288 B.R. at 56 (internal quotation marks and citation omitted); *see also In re Perry H. Koplik & Sons*, 377 B.R. at 73 ("The party seeking an interlocutory appeal has the burden of showing 'exceptional circumstances' to 'overcome the general aversion to piecemeal litigation' and 'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'") (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 24 (2d Cir. 1990)).

---

28 U.S.C. § 1292(b).

Here, after reviewing the parties' submissions, the Court finds that HSBC has failed to demonstrate that the issues raised in the Bankruptcy Court's decision satisfy § 1292(b) or that this appeal involves "exceptional circumstances." Although it appears that the Bankruptcy Court may have imprecisely articulated the applicable standard for reviewing HSBC's motion for summary judgment,[6] this error did not affect the Bankruptcy Court's holding and is not significant enough to warrant review at this interlocutory stage. For the three reasons discussed below, HSBC has failed to demonstrate that the Orders involve a controlling question of law about which there is a substantial basis for a difference of opinion, or that this appeal implicates the requisite "exceptional circumstances."

First, the Bankruptcy Court did not specifically rule upon any legal issues to which there could potentially be a "substantial ground for difference of opinion," but rather held that defendant failed to demonstrate that the facts material to plaintiff's claim were undisputed. *See* Bankr. Mem. Decision, p. 24. As a result, there are no "pure question[s] of law" that this Court can "decide quickly and cleanly without having to study the record." *In re Perry H. Koplik &*

---

[6] In describing the burden of proof that plaintiff must meet to succeed on her § 524 claim at trial, the Bankruptcy Court relied on *Mahoney v. Washington Mutual Card Servs. (In re Mahoney)*, 368 B.R. 579 (Bankr. W.D.Tex. 2007), and provided a quote from that case which stated that plaintiff has the burden of proving that an issue of fact exists. *In re Mahoney*, 368 B.R. at 584 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). HSBC argues that this Court must review the denial of its motion because the Bankruptcy Court recognized that the *Celotex* standard applied, but did not apply that standard. However, it is unclear why the *Celotex* standard would apply here since the gravamen of HSBC's motion for summary judgment was not that plaintiff lacks sufficient evidence to prove her case, as *Celotex* requires, but that its conduct does not constitute a violation of § 524. *See Celotex*, 477 U.S. at 322-23 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [because] [i]n such a situation, there can be no genuine issue as to any material fact"). HSBC also challenged plaintiff's proof regarding damages, but the Bankruptcy Court correctly concluded that she would only be entitled to attorneys' fees, costs, and possibly punitive damages – *see supra* note 3 – which need not be proven at the summary judgment stage. *See id.* The Bankruptcy Court correctly determined not to apply the *Celotex* standard, and required HSBC to meet its burden of proving that no issue of material fact exists. As a result, HSBC's argument is without merit.

*Sons*, 377 B.R. at 74. As to the first element of plaintiff's claim, the Bankruptcy Court ruled that there was a genuine issue regarding whether HSBC received notice of plaintiff's bankruptcy discharge because plaintiff alleges that only HRS, a predecessor of an HSBC affiliate, received notice and HSBC denies that it ever received such notice – a factual question. Although the Bankruptcy Court failed to look beyond HSBC's blanket denial to determine whether plaintiff's evidence regarding HRS's notice was sufficient to impute such notice to HSBC – a legal question – no party has argued that this issue involves a substantial ground for difference of opinion or that this issue is significant enough to warrant interlocutory review.

With respect to the second element of plaintiff's claim, the Bankruptcy Court ruled that there was a genuine issue regarding HSBC's notice of plaintiff's dispute with TransUnion. The Bankruptcy Court found circumstantial evidence that HSBC had notice of the error in the TransUnion report since the same error was corrected in plaintiff's Equifax report after she disputed the tradeline for the Account with all three credit reporting agencies. HSBC, however, denied any notice of plaintiff's dispute with TransUnion, which, like the previous issue, creates a factual question.

As to the third element of plaintiff's claim, the Bankruptcy Court ruled that there is a genuine issue regarding HSBC's ability to correct the tradeline for the Account because it sold the Account. The record, however, reasonably supports the inference that HSBC did update the tradeline for the Account on Equifax's – and not TransUnion's – report despite the sale.[7] Once

---

[7] Also, in plaintiff's opposition papers, she notes that HSBC "did remove the tradeline entirely from Plaintiff's TransUnion account after the instant action was commenced." Plaintiff's Opposing Memorandum of Law ("Opp. Mem."), p. 7. If true, this is significant evidence that plaintiff can offer at trial regarding HSBC's willful failure to update her credit report prior to this action being commenced, and further demonstrates that an interlocutory appeal is unwarranted here.

again, this is a factual issue, which HSBC has itself, in part, caused to remain unresolved because it prevented plaintiff from conducting discovery on this specific issue. *See* Bankr. Mem. Decision, pp. 6, 16-17.

Finally, with respect to the final element of plaintiff's claim, the Bankruptcy Court ruled that there is a genuine issue regarding the willfulness of HSBC's failure to correct plaintiff's report with TransUnion. Although the Bankruptcy Court stated that it denied HSBC's motion with respect to this element of plaintiff's claim because there is a genuine issue of material fact, its analysis indicates that the relevant facts are undisputed and that the reasonable inferences from those facts are indicative of HSBC's willful violation of the discharge injunction. In other words, it appears that the Bankruptcy Court reviewed the undisputed facts, and ruled that they were legally sufficient to support plaintiff's claim of willfulness. In considering this issue, the Bankruptcy Court reviewed recent case law to determine the extent to which plaintiff must establish HSBC's willfulness, and concluded that there was sufficient evidence in the record to do so. The Bankruptcy Court indicated that the available evidence reasonably showed that HSBC had a direct and indirect interest in continuing to collect on the Account despite the discharge injunction (*i.e.*, HSBC retained rights to a portion of any payments made on the Account under the sale agreements, and HSBC made no attempts to relinquish its rights under the sale agreements subsequent to the discharge injunction). Although this was a pure legal determination regarding the sufficiency of plaintiff's evidence, the Bankruptcy Court also found it significant that HSBC had refused to respond to certain discovery requests by plaintiff that could likely affect plaintiff's proof of HSBC's willfulness. As a result, the ruling on this issue did not solely involve a controlling issue of law that this Court can review on interlocutory

8

appeal. "Moreover, [q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *In re Perry H. Koplik & Sons*, 377 B.R. at 74 (alteration in original) (internal quotation marks and citation omitted).

Second, HSBC frames the question on appeal as whether the Bankruptcy Court erroneously construed 11 U.S.C. § 524 – the discharge injunction statute – as requiring creditors to update credit reporting information without demand, refusal, or any other action, but the Court did not render such a holding. In fact, the Bankruptcy Court specifically acknowledged that a creditor's failure to update a credit report, without more, does not violate the discharge injunction. *See* Bankr. Mem. Decision, p. 17. As the Bankruptcy Court correctly observed, there must be some evidence that the failure was willful, *see id.*; *see also Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007); *Bruno v. First USA Bank, N.A. (In re Bruno)*, 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006), and it held that plaintiff presented sufficient evidence to prove HSBC's willfulness, and could likely bolster its proof through additional discovery that HSBC had previously refused to provide.

Last, HSBC argues that there is conflicting authority in this Circuit concerning whether a plaintiff asserting a claim under § 524 must show that she made a demand upon the creditor to correct the report and that the creditor refused. HSBC premises its argument on the seemingly inconsistent decisions in *In re Bruno* and *In re Torres*. It argues that *In re Bruno* held that § 524 does not compel creditors to take the affirmative step of updating credit reports subsequent to a discharge order, but *In re Torres* held that a plaintiff can state a claim under § 524 if creditors deliberately fail to update credit reports. *See* Defendant's Moving Memorandum of Law ("Moving Mem."), pp. 6-8. As plaintiff recognizes, this supposed conflict is illusory. In *Russell*

9

*v. Chase Bank USA, N.A. (In re Russell)*, 378 B.R. 735 (Bankr. E.D.N.Y. 2007), Chief Judge Carla E. Craig, in citing *In re Torres* with approval, ruled that § 524 "could certainly include . . . a deliberate refusal to correct information previously supplied to credit reporting agencies, for the purpose of coercing [a debtor] to repay a discharged debt." 378 B.R. at 741. Chief Judge Craig also distinguished *In re Bruno* because that court was not presented with any allegation or evidence that the debtor notified the creditor of the reporting error or requested that the creditor have the error corrected. *Id.* at 742. Thus, according to the *In re Russell* Court, *In re Bruno* "assumed that if the debtors had made a proper request, the report would have been corrected." *Id.* Given this recent analysis of § 524, the decisions of *In re Bruno* and *In re Torres* are certainly compatible, and it is clear that a plaintiff must present some evidence of a creditor's refusal to correct outdated credit information or otherwise attempt to coerce the plaintiff into paying the discharged debt.

Here, the Bankruptcy Court ruled that plaintiff had presented sufficient evidence of HSBC's attempt to coerce payment, which – as stated above – included evidence that HSBC retained a direct and indirect interest under the sale agreements in having plaintiff pay off the Account despite the discharge injunction. As the Bankruptcy Court recognized, this evidence is not very weighty, but legally sufficient to survive summary judgment and that plaintiff intends to obtain additional discovery from HSBC, which HSBC previously refused to provide, regarding this specific issue. Because the Bankruptcy Court applied the law as articulated in *In re Russell*, HSBC's argument that the construction of § 524 needs to be clarified by this Court on

interlocutory appeal is unpersuasive.[8] Accordingly, HSBC has failed to satisfy § 1292(b) or demonstrate that this appeal involves "exceptional circumstances," and its motion for leave to appeal is denied.

## CONCLUSION

For the reasons set forth above, defendant HSBC's motion for leave to appeal the Bankruptcy Court's Orders, denying HSBC's motion for summary judgment, is denied. Accordingly, the Clerk of Court is directed to close this appeal.

SO ORDERED.

Dated: Brooklyn, New York
June 30, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge

---

[8] Plaintiff also argues that HSBC's motion should be denied for failing to file the challenged Orders of the Bankruptcy Court in support of its motion in contravention of Bankruptcy Rule 8003(b). Although plaintiff argues that this failure is fatal to HSBC's motion, the plain language of Rule 8003 does not make the filing of a motion for leave a jurisdictional matter. *See In re Orange Boat Sales*, 239 B.R. 471, 473-74 (S.D.N.Y. 1999). To the contrary, Rule 8003 states that a court can consider simply a notice of appeal, when no motion for leave to appeal is filed, in deciding whether an interlocutory appeal should be permitted. *See In re Adorn Glass & Venetian Blind Corp.*, No. 05 Civ. 1890, 2005 WL 3481325, at *3 (S.D.N.Y. Dec. 6, 2005). Moreover, HSBC corrected its failure on January 2, 2008 – the same date on which the Bankruptcy Court Clerk transmitted the appellate submissions to the District Court Clerk – and did not frustrate the Bankruptcy Court Clerk's duty of transmitting the appellate documents to this Court. Accordingly, HSBC's motion is not denied on this procedural ground.